IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS SCOTT,

    Petitioner,                    No. CIV-S-08-2227 GEB CKD P

    vs.

RAUL LOPEZ,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding with counsel with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges convictions entered in the Superior Court of Amador County for: (1) battery on a non-confined person by a prisoner; and (2) resisting an executive officer in performance of their duties. Petitioner was convicted on June 1, 2006. On June 27, 2006, he was sentenced to consecutive 25-years-to-life terms of imprisonment under California's "Three Strikes Law." Those sentences were ordered to be served consecutive to the 25-years-to-life sentence petitioner was already serving. This action is proceeding on the second amended petition filed November 20, 2010.

I. <u>Standard For Habeas Corpus Relief</u>

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the

1

United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

/////

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 551 U.S. 112, 119 (2007).

1  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

"[W]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). As long as "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded. Harrington, 131 S. Ct. 786.

If the state court does not reach the merits of a particular claim, de novo review applies. Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

II. Background

On direct appeal, the California Court of Appeal for the Third Appellate District (Court of Appeal) summarized the facts presented at trial as follows:

> On December 31, 2002, defendant, an inmate at Mule Creek State Prison, was angered when Correctional Officer Gaylord Gonzales required him to comply with a prison rule concerning seating in the dining hall. He cursed at the officer. When the officer approached him and demanded his identification card defendant punched the officer in the face. As the officer fell to the floor defendant struck him repeatedly.
>
> On August 8, 2003, Michael Cherry was working as a correctional sergeant at the prison. The prison was operating under a lockdown that day and the prisoners were denied access to the exercise yard. Another officer reported to Sergeant Cherry that defendant was very upset about not being able to go to the exercise yard. Sergeant

> Cherry went to the door of defendant's cell and talked to him.
>
> Defendant was very angry. He was screaming, yelling, kicking the door and pacing. He cursed at Sergeant Cherry and threatened to kill him. Defendant was demanding to be released for his yard time. Sergeant Cherry explained that the exercise yard was closed due to a security issue, and testified, "That's when [defendant] started threatening [him] some more."

Resp't's Lodged Doc. 1 at 2-3.

The claims raised in this action were presented to California courts either through direct review or state collateral actions and all claims were presented to the California Supreme Court. The court will identify procedural history with respect to each particular claim, to the extent necessary, below.

III. Arguments And Analysis

A. Right Of Self-Representation

Petitioner's first claim is that the trial court denied him his Constitutional right to self-representation at trial. This claim was presented to California's courts on direct appeal. The Court of Appeal issued the last reasoned opinion with respect to this claim.

The Court of Appeal summarized the facts concerning petitioner's claim as follows:

> On March 1, 2004, defendant came before the court for arraignment on the amended complaint. He told the court that he wanted to represent himself and that he had filed a *Faretta* motion. (*Faretta v. California* (1975) 422 U.S. 806 [45 L. Ed .2d 562].) The court advised him that self-representation would be ill-advised and suggested that he should allow his new attorney to represent him. After talking with counsel, he acquiesced.
>
> On November 17, 2004, defendant came before the court on a *Pitchess*[2] motion. His counsel said defendant wanted to make a *Marsden* motion[3] and a *Faretta* motion. Defendant was concerned that some of his records were missing. In the course of the

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] *People v. Marsden* (1970) 2. Cal.3d 118.

*Marsden* hearing defendant stated he had the unblockable right to proceed under *Faretta* at any time. The court acknowledged this and invited him to file a *Faretta* motion for consideration at the next hearing.

On December 8, 2004, defendant came before the court for a status hearing. After the conclusion of the discussion of various pending matters defense counsel said that defendant would like to address the court. Defendant asserted that he had psychiatric problems and wanted to inform the court that it was hard to follow the proceeding and that he was "not comprehending anything that's going on." The court noted he appeared to have been alert while in court. The prosecutor said he had just asked defense counsel whether he was concerned about defendant's mental competency. Defendant interjected with a disorganized protest about not being allowed to assist in his defense and an assertion that he had 11 motions to file. The court reminded him that he was represented by counsel and asked if there was anything further. The following ensued.

"[DEFENDANT]: You are saying I don't have a right to represent myself on *Faretta*?

"THE COURT: You may be able to do that, but you ought to file a motion before that can be heard. I'll have to have the District Attorney's response to it.

I completed the matters on calender. You are remanded to the custody of the Department of Corrections [and Rehabilitation].

"[DEFENDANT]: Refusing to let me address the Court on the *Faretta* matter?

"THE COURT: You may be seated. You may be seated.

"[DEFENDANT]: I don't have a right to proceed on *Faretta*? I have the written motion.

"THE COURT: Take the defendant away.

On June 20, 2005, a *Marsden* hearing was conducted. After the hearing, the *Marsden* motion was denied and the court said it was going to hear argument on the pending section 995 motion. Defendant objected that he was not ready for that because he wanted to supply evidence. The court and counsel told him the matter was to be resolved solely on the transcript of the preliminary examination.

When the matter returned to open court defendant persisted in personally addressing the court, insisting that he wanted to make a record concerning some kind of double jeopardy claim. The court

5

said the time had come to proceed with the section 995 motion. The following exchange ensued:

"[DEFENDANT]: Excuse me, Your Honor.

"THE COURT: No, nothing further.

"[DEFENDANT]: I can't represent myself?

"THE COURT: No. Let's move forward.

"[DEFENDANT]: So you're refusing me the right to represent myself, proceed pro. per.? You're refusing me that right?

"THE COURT: You have a trial date next week.

"[DEFENSE COUNSEL]: Your Honor, it's not next week. It's three weeks.

"THE COURT: Three weeks away. And for purposes of today, you're going to- -you can file your own motion to be represented by yourself, but I'm not going to hear it today. It's 10 minutes to 5:00 and I'm going to hear the [section] 995 so we can move forward today.

On October 12, 2005, after another *Marsden* motion was denied, the court offered to address the issue of self representation. Defendant did not immediately take up the offer. When the matter returned to open court his counsel said that defendant would like to set a date for further motions, including a *Faretta* motion. The court calendered the matter for November 16, 2005.

When the matter came on November 16, 2005, defendant made another *Marsden* motion. The court granted the motion and defendant accepted appointment of a new attorney.

On May 17, 2006, defendant made another *Marsden* motion. The gist of his grievance was that counsel refused to file motions that defendant wanted filed. Counsel explained why he believed the motions were inappropriate. The court denied the motion. When the matter returned to open court defendant asserted that he was being forced by counsel's refusal to make the motions he wanted, into representing himself. He agreed that he wanted to make a *Faretta* motion but insisted, five times, that he was doing so under "duress."

The court said defendant should fill out the court's *Faretta* form. Defendant refused to do so. He asserted that he had his "own motion" and "[he] d[id]n't have to agree to those stipulated terms because [he was] being forced." The court assured him that using the form did not result in stipulated terms. Defendant again

     refused to fill out the form. The court said that the form was designed to make sure that defendant understood the responsibilities of self-representation and that the court was required to ask the questions that were on the form. Defendant reiterated his refusal. The court said the motion for self-representation would be entertained at the next hearing.

     At the next hearing on May 30, 2006, the court noted that defendant had refused to fill out the *Faretta* form and asked him to explain. Defendant said he refused because his self-representation was involuntary. In his view, he was being forced to choose between bad counsel and no counsel. The court replied that if defendant undertook self-representation pursuant to *Faretta*, he would be "stuck with the consequences" and could not claim that he was "represented by incompetent counsel." Defendant insisted that he was being forced into self-representation for the reasons given in his *Marsden* motion for replacement of counsel. The court said this was not an acceptable basis for granting self-representation and denied the *Faretta* motion.

     The court then conducted a *Marsden* hearing. After an extensive and patient inquiry the court denied the *Marsden* motion, finding that counsel was fully competent and that the cause of dissatisfaction was that defendant had his own view of the law and refused to listen to counsel concerning trial tactics.

Resp't's Lodged Doc. 1 at 3-7. The Court of Appeal then addressed petitioner's right of self-representation claim as follows:

     Defendant contends that the trial court erred in denying his requests to represent himself. He argues that he was repeatedly denied his constitutional right under *Faretta* to represent himself. The argument is unpersuasive and the contention of error is not meritorious.

     Defendant asserts that his request for self-representation was consistently made over the course of pretrial proceedings, and was unequivocal, particularly at the proceedings related in our procedural background of his *Faretta* claim. He fails to make a particularized argument concerning error at any one of the proceedings, treating them as an aggregate. We address his claim on that basis, noting that in many instances defendant's request was not denied; rather he withdrew it or resolution was continued until completion of the scheduled business presently before the court or because the scheduled matters were complete.

     Defendant acknowledges that a *Faretta* request must be unequivocal. "If a request for self-representation is unequivocally asserted within a reasonable time before commencement of the trial, and if the assertion is voluntarily made with an appreciation

7

of the risks involved, the trial court has no discretion to deny it." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1219 (*Bloom*).) Defendant argues that his requests must be deemed unequivocal because he made them repeatedly. However, repeated equivocal requests do not become unequivocal because of repetition.

"To protect the right to counsel, a trial court faced with a motion for self-representation should determine whether the defendant truly desires self-representation. The court may consider the defendant's conduct and other words, including any expression of ambivalence, in deciding the motion. 'A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied.' ([*People v. Marshall* (1997) 15 Cal.4th 1,] 23.)" (Witkin, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 254, subd. (b), p. 391 (Witkin).)

In this case there was never an unambivalent request for self-representation. Even when defendant made an actual motion at an appropriate juncture he expressly announced that his request was involuntary and made only because of his dissatisfaction with appointed counsel and his refractory insistence that the trial court erred in the denial of his many *Marsden* motions. In this respect the case is similar to *People v. Scott* (2001) 91 Cal.App.4th 1197 (*Scott I*), which upheld denial of such a *Faretta* request as equivocal.

"More importantly, the motion was not unequivocal. [The defendant] made his *Faretta* motion immediately after the trial court denied his *Marsden* motion, and [the defendant's] subsequent comments suggest he made the *Faretta* motion only because he wanted to rid himself of appointed counsel. When the trial court gave [the defendant] a waiver of rights form in response to his *Faretta* request, the court said: 'For the record, let me repeat it. [A]re you sure you want to represent yourself?' [The defendant] replied, 'Yes. I do judge. I don't want [appointed defense counsel] to represent me.' [The defendant] also said: '[I]f I can't get a [new] state appointed attorney, then I represent myself,' and , 'For the record, I don't want this attorney representing me. You the court is coercing me.'" (*Scott I*, *supra*, 91 Cal.App.4th at p. 1205, fn. omitted.)

We agree with *Scott I*. Such an assertion is not one "voluntarily made with an appreciation of the risks involved." (*Bloom*, *supra*, Cal.3d at p. 1219.) Here defendant refused to comply with the reasonable direction that he use the court's *Faretta* form so that the court could determine that he understood the responsibilities of self-representation. He implicitly refused to accept the possibility that the court would be upheld in the rulings on his *Marsden* motions. In insisting that he was improperly being forced to represent himself, he manifested denial as to the risks of self-

8

> representation. The trial court could reasonably conclude that in defendant's view, he was not subject to those risks: He would not be "stuck with the consequences" because he was acting under "coercion." In these circumstances the trial court acted within its discretion in denying his equivocal request.

Resp't's Lodged Doc. 1 at 10-13.

In <u>Faretta v. California</u>, 422 U.S. 806, 807 (1975), the United States Supreme Court held that an accused has a right to conduct his own defense, provided only that he voluntarily and intelligently waives his right to counsel. The holding of <u>Faretta</u> is based on "the long-standing recognition of a right of self-representation in federal and most state courts, and on the language, structure, and spirit of the Sixth Amendment." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 174 (1984).

The Court of Appeal essentially identified the standard established by the Supreme Court in <u>Faretta</u> for judging claims concerning the denial of the right to self representation with its citation to "*People v. Bloom* (1989) 48 Cal.3d 1194, 1219." The Court of Appeal found that petitioner never made what could be construed as a voluntary and intelligent waiver of the right to counsel because petitioner refused to acknowledge awareness of what exactly would be relinquished if petitioner were to proceed pro se nor otherwise demonstrated awareness. Petitioner fails to point to anything suggesting the Court of Appeal's finding amounts to an unreasonable application of <u>Faretta</u>. Furthermore, petitioner fails to point to anything suggesting the rejection of his right to self-representation claim is based on an unreasonable determination of the facts. Because petitioner is precluded from obtaining relief under 28 U.S.C. § 2254(d), his first claim should be rejected.

B. <u>Denial Of Right To Be Present At Trial And Right To Confrontation</u>

Petitioner asserts comments made by the trial court shortly before trial forced petitioner to remove himself from the trial which, in turn, resulted in a violation of his Constitutional rights to be present at trial and to confront his accusers. This claim was presented to California courts on direct appeal, but it does not appear any court issued a reasoned decision

with respect to the claim.[4]

   The California Court of Appeal described the facts underlying petitioner's second claim as follows:

> When the matter first come on before the jury panel the court noted that defendant was in prison garb and asked the jurors not to be prejudiced or biased against him. "It has nothing to do with this trial. He can be dressed as a clown, that wouldn't make him a funny guy. So I want all of you to assure me that the way that defendant is dressed will not affect your decision in this case." The court then described the charges. As the court was explaining the role of the jurors and their duty to follow the law it was interrupted, presumably by some nonverbal conduct of defendant. The following interchange ensued:
>
> "THE COURT: [T]here may be interruptions by defendant too, I don't want you to-
>
> "[DEFENDANT]: I'm not going to.
>
> "THE COURT: I don't want you to be prejudiced against him because of his interruptions, basically hasn't been cooperative, but has got nothing to do with whether he is guilty or not guilty of these crimes that are charged against him. I want you to understand that. If he jumps around and raises hell-
>
> "[DEFENDANT]: Can I leave please, I don't want to participate in this fiasco. I want to leave. My constitutional rights are not being respected. I do not want to participate in this-
>
> "THE COURT: He's right. He doesn't have to be here either.
>
> "[DEFENDANT]: Right about that.
>
> "THE COURT: I told him if he disrupts-
>
> "[DEFENDANT]: I want to lay on my bunk.
>
> "THE COURT: I hope that you are listening to me and not to him. If he disrupts these proceedings so I can't function anymore, then I will have to remove him from the courtroom.
>
> "[DEFENDANT]: You don't have to remove-I want to go.

---

[4] On direct appeal, the California Court of Appeal only considered wether the comments identified below constitute judicial misconduct. Resp't's Lodged Doc. 1 at 16-17. The Court of Appeal did not address whether the comments resulted in a violation of petitioner's Constitutional rights to be present at trial and to confront his accusers.

10

> "THE COURT: With the admonition that as soon as he decides not to be disruptive anymore he can come back if he decides not to be disruptive anymore he can come back if he decides. If he's requested that he leave, allow him to do that. Mr Scott, if you change your mind let the officers know and you can come right back.
>
> "[DEFENDANT]: Yes, sir. When you say come right back up here, yeah, my clown garb, everything.
>
> "THE COURT: See you on appeal.

Resp't's Lodged Doc. 1 at 8-10.

There is nothing in the record suggesting that the trial court forced petitioner's removal from any portion of his trial. Petitioner chose to leave on his own. Therefore, there is no violation of petitioner's right to be present at his trial nor his right to confront his accusers. The trial court's "clown" analogy and suggestion that petitioner might "raise hell," in retrospect, may not have been the best choice of words. But, it cannot reasonably be suggested that the choice of those words forced petitioner from the courtroom, particularly given that the trial court was trying to mitigate the potential damage being caused by the petitioner's behavior and outbursts.

Furthermore, petitioner has failed to show that rejection of this claim by California courts is contrary to, or involves an unreasonable application of clearly established federal law as determined by the Supreme Court. Likewise, he has not shown the rejection of his claim is based on an unreasonable determination of the facts in light of the evidence presented at trial. Therefore, petitioner is precluded from obtaining relief on his second claim by 28 U.S.C. § 2254(d).

    C. <u>Shackling</u>

Next, petitioner asserts that his being forced to wear leg restraints during trial amounted to a violation of his right to due process under the Fourteenth Amendment. This claim was presented to California courts on direct appeal. The California Court of Appeal, the last court to issue a reasoned opinion with respect to petitioner's claim, declined to reach the merits

11

of the claim because petitioner failed to object to the use of leg restraints at trial.[5] Resp't's Lodged Doc. 1 at 14-15.

Respondent argues that petitioner's shackling claim is procedurally defaulted. Federal courts will not review claims rejected by state courts if the decision of the state court resulting in a denial of the federal claim rests on a state law that is independent of the federal question and adequate to support judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). The denial of petitioner's "shackling" claim was based on California's "contemporaneous objection" rule which, in this case, is independent of any issue of federal law. Also, the Ninth Circuit Court of Appeals has found that a violation of the California's contemporaneous objection rule is "adequate to support judgment" for purposes of determining whether a claim has been procedurally defaulted. See Melendez v. Pliler, 288 F.3d 1120, 1125 (2002).

In light of the above, and because petitioner has not attempted to establish cause for his failure to object to his being shackled at trial, and prejudice accruing therefrom, see Wainwright v. Sykes, 433 U.S. 72, 90-91 (1971), petitioner's shackling claim is procedurally defaulted.

D. Jury Instruction Regarding Shackling

In his fourth claim, petitioner asserts that the trial court's failure to sua sponte inform jurors to disregard the fact that petitioner was shackled violated his right to due process under the Fourteenth Amendment.

Claims of error in state jury instructions are generally a matter of state law and do not invoke a Constitutional question unless they amount to a deprivation of due process. Hayes v. Woodford, 301 F.3d 1054, 1086 (9th Cir. 2002). A violation of due process occurs if a trial is fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 72-73 (1991). Because the omission of

---

[5] The trial court ordered that petitioner be restrained with a "leg brace" during trial. RT 391. However, petitioner insisted that he be restrained with visible chains around his ankles. RT 394-96.

an instruction is less likely to be prejudicial than a misstatement of the law, a habeas petitioner whose claim involves a failure to give a particular instruction bears an especially heavy burden. Henderson v. Kibbe, 431 U.S. 145, 155 (1977).   Petitioner's claim of jury instruction error was presented to California's courts on direct appeal.  The California Court of Appeal issued the last reasoned opinion with respect to the claim.

The Court of Appeal assumed that failure to instruct jurors that they should disregard the fact that petitioner appeared in court wearing physical restraints was error under California law.  However, the court found any error to be harmless:

> The trial court did instruct that the jury was to disregard defendant's prison garb and his disruptive conduct.  Implicit in this was that the derivative need to restrain defendant, which the jury would likely attribute to defendant's inmate status and disruptive conduct, was also to be disregarded.  Defendant did not testify, the case in our view was not closely contested as to guilt, and the error, if any, in failing to instruct on restraints was not accompanied by other error.  In these circumstances any error was harmless.

Resp't's Lodged Doc. 1 at 15-16.

After reviewing the record, the court finds that the California Court of Appeal's decision that failure to specifically instruct jurors not to consider the fact that petitioner wore physical restraints during trial was harmless is not contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Furthermore the decision is not based on an unreasonable determination of the facts.  Accordingly, petitioner's claim that his jury was not adequately instructed must be rejected.

E. Sentence

In his fifth claim, petitioner asserts his right to due process under the Fourteenth Amendment was violated when the trial court found that two convictions from Arizona for robbery could be deemed "strikes" under California's "Three Strikes Law" resulting in an increase of petitioner's sentence.  No California court issued a reasoned opinion with respect to

this claim.

Generally speaking, under California's "three strikes law," crimes committed in other jurisdictions can constitute "strikes": "[a] defendant whose prior conviction was suffered in another jurisdiction is . . . subject to the same punishment as a person previously convicted of an offense involving the same conduct in California." People v. Myers, 858 P.2d 301, 306 (Cal. 1993). Petitioner asserts an Arizona robbery cannot constitute a "strike" because the elements of robbery in Arizona and California are different.

Whether the trial court determined correctly that petitioner's Arizona robberies constitute "strikes" under California law is, generally speaking, a question of California law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). The trial court relied on People v. Mumm, 120 Cal. Rptr. 2d 18 (4th Dist. 2002) in finding that Arizona robberies could be "strikes" for purposes of California's "three strikes law." Neither the determination by the trial court that, under California law, the Arizona robberies could be "strikes," nor the same decision by the California Court of Appeal in Mumm, can be reviewed here.

Whether a finding that Arizona robberies constitute "strikes" in California violates a provision of federal law is an appropriate subject for habeas review. In order to establish a federal claim, petitioner points only to Jackson v. Virginia, 443 U.S. 307, 319 (1929) which stands for the proposition that a conviction cannot stand if, after viewing the evidence in the light most favorable to the prosecution, the court finds that no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt. It is not clear how this proposition applies here as petitioner does not allege that any finding of fact made by his jury was not supported by adequate evidence. Rather, he challenges what is essentially a determination as to what constitutes a "strike" under California law. In any case, petitioner has not met his burden of demonstrating the California Supreme Court's rejection of petitioner's "due process" claim concerning his sentence is contrary to, or involves an unreasonable

1  application of clearly established federal law as determined by the Supreme Court of the United
2  States or is based on an unreasonable determination of the facts in light of the evidence presented
3  at trial.
4          Also, petitioner asserts his Arizona convictions cannot be used to enhance his
5  current sentence because a term of his plea agreement with respect to the Arizona convictions
6  was that those convictions "could not be used for any purpose." Petitioner's assertion that the
7  convictions "could not be used for any purpose" does not make sense and petitioner fails to point
8  to a copy of the Arizona plea agreement. Accordingly, nothing before the court suggests
9  petitioner's plea agreement acts as a bar to the Arizona robbery convictions being used as
10 "strikes" in California.
11         For all of theses reasons petitioner's fifth claim should be rejected.
12     F. <u>Ineffective Assistance of Counsel</u>
13         Petitioner asserts that he was deprived of his Sixth Amendment right to effective
14 assistance of counsel. No California court issued a reasoned decision with respect to this claim.
15 The standard for judging ineffective assistance of counsel claims is set forth in <u>Strickland v.
16 Washington</u>, 466 U.S. 668 (1984). First, a defendant must show that, considering all the
17 circumstances, counsel's performance fell below an objective standard of reasonableness.
18 <u>Strickland</u>, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that
19 are alleged not to have been the result of reasonable professional judgment. <u>Id</u>. at 690. The court
20 must then determine whether in light of all the circumstances, the identified acts or omissions
21 were outside the wide range of professional competent assistance. <u>Id</u>. Second, a defendant must
22 affirmatively prove prejudice. <u>Id</u>. at 693. Prejudice is found where "there is a reasonable
23 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
24 been different." <u>Id</u>. at 694. A reasonable probability is "a probability sufficient to undermine
25 confidence in the outcome." <u>Id</u>.
26 \\\\\

        Essentially, petitioner asserts that none of the attorneys that represented him conducted any pretrial investigation. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691. Here, petitioner fails to point to any evidence indicating that his attorneys failed to conduct any pretrial investigation.[6] More importantly, he fails to point to anything specific that any of his attorneys should have and failed to investigate.

        Petitioner asserts that there were a number of witnesses who observed "the" altercation and could have testified on behalf of petitioner. However, petitioner fails to indicate whether he is referring to the incident with Officer Gonzales or Cherry. Additionally, petitioner fails to point to the names of such witnesses or the content of their testimony. Therefore, he has not established prejudice by their not being called to testify.

        Because petitioner has failed to demonstrate the actions of his trial counsel prejudiced his case in anyway, or that trial counsel's performance was even objectively unreasonable, his ineffective assistance of counsel claim must be rejected. Furthermore, the California Supreme Court's rejection of petitioner's ineffective assistance of counsel claim is not contrary to, nor it does not involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Finally, the decision is not based on an unreasonable determination of the facts. Therefore, as with most of petitioner's claims, relief is barred by 28 U.S.C. § 2254(a).

////

---

[6] Petitioner points to two pieces of evidence in support of his assertion that his attorneys failed to conduct any pretrial investigation. First, petitioner points to a hearing, RT 202-205, in which trial counsel at that time admitted that the investigation up until that point had been lacking. But, this does not provide support for the assertion that no investigation was done. Second, petitioner points to his own "Exhibit A–Declaration of Curtis Scott." "Exhibit A" is comprised of statements made by petitioner and other potential exhibits including reports from officers present during petitioner's altercation with Officer Gonzales. Petitioner does not specifically explain how "Exhibit A" supports his claim that trial counsel failed to conduct adequate investigation and such is not otherwise apparent after review of the exhibit.

IV. Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 15, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
scot2227.157